**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7              IN THE UNITED STATES DISTRICT COURT

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                    SAN JOSE DIVISION

10   Jensen Family Farms, Inc.,                    NO. C 08-05003 JW

11              Plaintiff,              **ORDER DENYING PLAINTIFF'S**
        v.                              **MOTION FOR SUMMARY JUDGMENT;**
12                                      **DENYING PLAINTIFF'S MOTION FOR**
     Monterey Bay Unified Air Pollution Control   **PERMANENT INJUNCTION; GRANTING**
13   District, et al.,                  **DEFENDANT'S MOTION FOR**
                                        **JUDGMENT ON THE PLEADINGS**
14              Defendants.
                                    /
15

16                        **I.  INTRODUCTION**

17          Jensen Family Farms ("Plaintiff") brings this action against Monterey Bay Unified Air

18   Pollution Control District ("District") and the California Air Resources Board ("CARB")

19   (collectively, "Defendants"), alleging, *inter alia*, violations of the Supremacy Clause of the United

20   States Constitution and the Due Process Clause of the Fourteenth Amendment.  Plaintiff alleges that

21   Defendants violated its constitutional rights when the District adopted and began enforcement of

22   several District Rules that require Plaintiff to register and pay fees for diesel compression ignition

23   ("CI") engines used in Plaintiff's agricultural operations, and also set emissions standards for those

24   engines.

25
26
27
28

United States District Court
For the Northern District of California

1    Presently before the Court are Plaintiff's Motion for Summary Judgment and for Permanent

2  Injunction[1] and Defendant and Defendant-Intervenor's Motion for Judgment on Pleadings.[2]  The

3  Court conducted a hearing on June 1, 2009.  Based on the papers submitted to date and oral

4  argument, the Court DENIES Plaintiff's Motion for Summary Judgment and for Permanent

5  Injunction and GRANTS Defendant and Defendant-Intervenor's Motion for Judgment on the

6  Pleadings.

7                                    **II.  BACKGROUND**

8  **A.     Undisputed Facts**[3]

9        Plaintiff Jensen Family Farms is a farming-for-profit agricultural operation incorporated

10  under the laws of the State of California with a principle place of business in Monterey County,

11  California.  (Plaintiff's Motion at 3-4.)  Defendant District is a political subdivision of the State of

12  California, consisting of three counties: Monterey County, Santa Cruz County and San Benito

13  County, and is responsible for air monitoring, permitting, enforcement and long-range air planning

14  in those counties.  (Id. at 4 n.2.)  Defendant CARB is the State of California's air pollution agency,

15  as required by the regulatory scheme of the federal Clean Air Act ("CAA").[4]  (CARB's Motion to

16  Intervene at 2, Docket Item No. 11.)

17        Plaintiff is the owner and operator of diesel CI engines having a brake horsepower ("bhp") of

18  both less and more than 175 bhp.  (Plaintiff's Motion at 4.)  These engines, used for the purpose of

19

20        [1] (Plaintiff's Motion for Summary Judgment, Declaratory Judgment and Motion for
   Permanent Injunction, hereafter, "Plaintiff's Motion," Docket Item No. 13.)

21
        [2] (Defendant and Defendant-Intervenor's Motion for Judgment on the Pleadings, hereafter,
22  "Defendant's Motion," Docket Item No. 28.)

23        [3] Both Defendants expressly state in their Oppositions that they do not dispute the facts set
   forth in Plaintiff's Motion.  (See Defendant Monterey Bay Unified Air Pollution Control District's
24  Opposition to Plaintiff's Motion for Summary Judgment at 1, hereafter, "District's Opposition,"
   Docket Item No. 25; Defendant-Intervenor California Air Resources Board's Opposition to
25  Plaintiff's Motion for Summary Judgment at 2, hereafter, "CARB's Opposition," Docket Item No.
   29.)

26
        [4] See *infra* Part III, section A for further discussion of the regulatory scheme of the state
27  agencies involved in this case.

28                                            2

1  providing power to irrigation pumps on Plaintiff's farms, include both stationary and portable

2  engines.[5]

3       On May 16, 2007, the District enacted Rules 220, 310 and 1010.[6]   Rule 220, titled

4  Agricultural Diesel Engine Registration, requires owners or operators to register any diesel engine

5  50 bhp or larger with the District.  (See id., Ex. 4 at 29.)  Rule 310, titled, "Agricultural Diesel

6  Engine Registration Fees," requires that every applicant for a diesel engine registration pursuant to

7  Rule 220 pay application and annual registration fees.  (See id., Ex. 5 at 34.)  Rule 1010, titled, "Air

8  Toxic Control Measure for Stationary Compression Ignition Engines," sets emission standards for

9  new agricultural stationary diesel-fueled CI engines.  (See id., Ex. 6 at 66.)

10      In February 2008, pursuant to Rules 220 and 310, Plaintiff registered several engines with

11 the District and paid the requisite registration fees.  (Jensen Affidavit ¶¶ 7-8.)  On January 19, 2009,

12 Plaintiff received a letter from the District approving Plaintiff's registration applications.  (Id. ¶ 9.)

13 **B.    Procedural History**

14      On December 8, 2008, Plaintiff filed an Amended Complaint against the District seeking

15 declaratory and injunctive relief, alleging that Rules 220, 310 and 1010 are unconstitutional, as the

16 Rules: (1) are preempted by the federal Clean Air Act, (2) are preempted by California State

17 Regulations, and (3) violate Plaintiff's Fifth Amendment Right to Due Process.  (See First Amended

18 Complaint, hereafter, "FAC," Docket Item No. 6.)

19      On January 20, 2009, CARB filed a Motion to Intervene as a Defendant on the ground that

20 Plaintiff's Amended Complaint challenged CARB regulations, in defense of which CARB has a

21 direct interest.  (See CARB's Motion to Intervene at 2.)  On February 24, 2009, Plaintiff filed a

22 Statement of Non-Opposition to CARB's Motion to Intervene.  (Docket Item No. 17.)  On February

23 26, 2009, the Court granted CARB's Motion, finding that CARB satisfied the four-part test for

24

25      [5] (Id.; Affidavit of Ross N. Jensen in Support of Plaintiff's Motion for Summary Judgment, Ex. 2, hereafter, "Jensen Affidavit," Docket Item No. 15.)

26

27      [6] (See Affidavit of Matthew S. Hale in Support of Plaintiff's Motion for Summary Judgment, Exs. 4-6, hereafter, "Hale Affidavit," Docket Item No. 14.)

28                                          3

**United States District Court**
For the Northern District of California

**United States District Court**

For the Northern District of California

1  intervention as a matter of right under Federal Rule of Civil Procedure 24(a).  (See Order Granting

2  CARB's Motion for Intervention at 2, Docket Item No. 18.)

3       Presently before the Court is Plaintiff's Motion for Summary Judgment and for Permanent

4  Injunction and Defendant and Defendant-Intervenor's Motion for Judgment on the Pleadings.

### **III.  STANDARDS**

5

6  **A.     Summary Judgment**

7       Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

8  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

9  material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

10 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims

11 or defenses."  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

12      The moving party "always bears the initial responsibility of informing the district court of

13 the basis for its motion. . . ."  Id. at 323.  "The judgment sought should be rendered if the pleadings,

14 the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

15 as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

16 P. 56(c).  The non-moving party "may not reply merely on allegations or denials in its own pleading;

17 rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts

18 showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).

19      When evaluating a motion for summary judgment, the court views the evidence through the

20 prism of the evidentiary standard of proof that would pertain at trial.  Anderson v. Liberty Lobby

21 Inc., 477 U.S. 242, 255 (1986).  The court draws all reasonable inferences in favor of the non-

22 moving party, including questions of credibility and of the weight that particular evidence is

23 accorded.  See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992).  The court

24 determines whether the non-moving party's "specific facts," coupled with disputed background or

25 contextual facts, are such that a reasonable jury might return a verdict for the non-moving party.

26 T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987).  In such a case,

27

28                                                        4

1   summary judgment is inappropriate.  Anderson, 477 U.S. at 248.  However, where a rational trier of

2   fact could not find for the non-moving party based on the record as a whole, there is no "genuine

3   issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

4   **B.      Judgment on the Pleadings**

5          Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the

6   pleadings at any time after the pleadings are closed but within such time as not to delay the trial.

7   Fed. R. Civ. P. 12(c).  "For the purposes of the motion, the allegations of the non-moving party must

8   be accepted as true, while the allegations of the moving party which have been denied are assumed

9   to be false."  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir.

10  1990).  Judgment on the pleadings is proper when the moving party clearly establishes on the face of

11  the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment

12  as a matter of law."  Id.  When brought by the defendant, a motion for judgment on the pleadings

13  under Federal Rule of Civil Procedure 12(c) is a "means to challenge the sufficiency of the

14  complaint after an answer has been filed."  New. Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1115

15  (C.D. Cal. 2004).  A motion for judgment on the pleadings is therefore similar to a motion to

16  dismiss.  Id.  When the district court must go beyond the pleadings to resolve an issue on a motion

17  for judgment on the pleadings, the proceeding is properly treated as a motion for summary

18  judgment.  Fed. R. Civ. P. 12(c); Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1301 (9th Cir.

19  1982).

20                                  **IV.  DISCUSSION**

21      Plaintiff moves for summary judgment on the grounds that Rules 220, 310 and 1010: (1) are

22  preempted by the CAA and thus violate the Supremacy Clause, (2) are preempted by California

23  Regulations, and (3) violate Plaintiff's rights to Due Process.  The District and CARB move for

24  judgment on the pleadings, on the ground that, as a matter of law, there can be no federal or state

25  preemption of Rules 220, 310 and 1010.  Since the parties' Motions are essentially cross-motions on

26  dispositive legal issues, the Court addresses the issues they raise together.

27

28                                              5

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**A.      Regulatory Scheme**

Under the CAA, regulatory authority over air quality is bifurcated between the federal

Environmental Protection Agency ("EPA") and the states, where each state has the primary

responsibility for assuring air quality within its entire geographic area.  42 U.S.C. § 7407.  The EPA

identifies pollutants to regulate and establishes national ambient air quality standards ("NAAQS").

The EPA sets NAAQS "criteria" for pollutants and designates regions as in "attainment" or

"nonattainment" of the standards.  42 U.S.C. §§ 7407, 7409.  In areas designated as nonattainment

for a pollutant, states are empowered to develop and submit for EPA approval state implementation

plans ("SIPs") to provide attainment, maintenance and enforcement of NAAQS within the state.

SIPs include rules and measures to demonstrate that NAAQS will be attained by dates set in the

CAA.  See 42 U.S.C. §§ 7409, 7410(a).  The EPA reviews and approves SIPs, and after its approval,

a SIP is enforceable by both the EPA and the state.  See id.

California regulates air quality pursuant to both the federal CAA and the California Clean

Air Act, Cal. Health & Safety Code §§ 39000, *et seq*.  Regulatory authority under the California

Clean Air Act is bifurcated between CARB and thirty-five local air districts.  See Cal. Health &

Safety Code § 39002.  CARB is the State of California's air pollution agency responsible for the

preparation and enforcement of California's SIP, as required by the CAA.  Cal. Health & Safety

Code § 39602.

Local air districts have the "primary responsibility" to control certain sources of emissions,

including stationary and mobile sources through indirect and area-wide source programs and

transportation control measures.  See Cal. Health & Safety Code §§ 39002, 40716-17.  "Subject to

the powers and duties of the state board, the districts shall adopt and enforce rules and regulations to

achieve and maintain the state and federal ambient air quality standards in all areas affected by

emission sources under their jurisdiction, and shall enforce all applicable provisions of state and

federal law."  Cal. Health & Safety Code § 40001.  California state law charges the Monterey Bay

6

1    Unified Air Pollution Control District with the primary responsibility to attain the NAAQS within

2    the North Central Coast Air Basin.  Id.

3    **B.        Preemption**

4         Pursuant to the Supremacy Clause of Article VI, clause 2, of the United States Constitution,

5    federal law preempts state law "when federal regulation in a particular field is so pervasive as to

6    make reasonable the inference that Congress left no room for the States to supplement it."  Bank of

7    Am. v. City and County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002).  Preemption is

8    characterized as either: (1) express ("Congress can define explicitly the extent to which its

9    enactments pre-empt state law"); (2) field ("state law is pre-empted where it regulates conduct in a

10   field that Congress intended the Federal Government to occupy exclusively"); or (3) conflict ("state

11   law is pre-empted to the extent that it actually conflicts with federal law").  English v. General Elec.

12   Co., 496 U.S. 72, 78-79 (1990).

13        "There is a general presumption against preemption in areas traditionally regulated by

14   states."  Oxygenated Fuels Inc. v. Davis, 331 F.3d 665, 668 (9th Cir. 2003) (citing Rice v. Santa Fe

15   Elevator Corp., 331 U.S. 218, 230 (1947)).  As to such areas, preemption applies only "where there

16   is 'clear evidence' that Congress meant to assert federal control."  Nat'l Ass'n of Home Builders v.

17   San Joaquin Valley Unified Air Pollution Control Dist., No. CV 07-0820 LJO, 2008 WL 4330449,

18   at *9 (E.D. Cal. Sept. 19, 2008) (citing Oxygenated Fuels Inc., 331 F.3d at 673).

19        "Environmental regulation is an area of traditional state control."  Oxygenated Fuels, 331

20   F.3d at 673.  "Air pollution falls under the broad police powers of the states, which include the

21   power to protect the health of citizens in the state."  Nat'l Ass'n, 2008 WL 4330449, at *9 (citing

22   Exxon Mobil Corp. v. U.S. Envtl. Prot. Agency, 217 F.3d 1246, 1255 (9th Cir. 2000)).  The CAA

23   "generally seeks to preserve state authority" in that it declares air pollution prevention and air

24   pollution control to be  "the primary responsibility of States and local governments."  See

25   Oxygenated Fuels, 331 F.3d at 670-71 (quoting 42 U.S.C. § 7401(a)(3)).  "The overriding purpose

26

27

28                                              7

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  of the [federal] CAA is to force the states to do their job in regulating air pollution effectively."

2  Exxon, 217 F.3d at 1255.

3     **1.     District Rules 220 and 310**

4          **a.     Federal Preemption**

5     Plaintiff contends that section 209(e)(1) of the CAA, 42 U.S.C. § 7543(e)(1), preempts a

6  state's and its political subdivisions' ability to adopt or enforce requirements relating to nonroad

7  engines with a horsepower of less than 175 bhp. (Plaintiff's Motion at 10.) Since District Rules 220

8  and 310 require registration of and the payment of fees for nonroad engines less than 175 bhp,[7]

9  Plaintiff contends that the Rules are preempted by the CAA and violate the Supremacy Clause of the

10  United States Constitution. (Id.) The District and CARB contend that there is no preemption,

11  because Rules 220 and 310 are not emissions standards. (Defendant's Motion at 6.)

12     Section 7543(e)(1) states, in relevant part:

13     No State or any political subdivision thereof shall adopt or attempt to enforce any
      standard relating to the control of emissions from new motor vehicles or new motor
14     vehicle engines subject to this part. No State shall require certification, inspection,
      or any other approval relating to the control of emissions from any new motor
15     vehicle or new motor vehicle engine as condition precedent to the initial retail sale,
      titling (if any), or registration of such motor vehicle, motor vehicle engine, or
16     equipment.

17  To determine whether the District Rules 220 and 3310 are preempted by section 7543(e)(1), the

18  Court must first determine whether the Rules are a standard or other requirement relating to the

19  control of emissions. 42 U.S.C. § 7543(e)(1).

20     A standard or other requirement relating to the control of emissions relates to the emission of

21  a vehicle or engine, where a vehicle or engine must not emit more than a certain amount of a given

22  pollutant, "must be equipped with a certain type of pollution-control device, or must have some

23  other design feature related to the control of emissions." Pac. Merchant Shipping Ass'n v.

24  _____

25     [7] Specifically, Rule 220 provides: "Before any 50 bhp or larger diesel engine or engines may
   be operated, the owner or operator shall register such engine(s) by submitting the registration
26  information specified in Subsection 3.2 . . . to the District. . . ." (Rule 220 § 3.1.) Rule 310 requires
   payment of registration fees and provides that "[t]he purpose of this Rule is to provide funding for
27  the issuance and enforcement of Registrations of Agricultural Diesel Engines." (Rule 310 § 1.1.)

28                                        8

United States District Court

For the Northern District of California

1  Goldstene, 517 F.3d 1108, 1114 (9th Cir. 2008) (citing Engine Mfg. Ass'n v. South Coast Air

2  Quality Mgmt. Dist., 541 U.S. 246, 253 (2004)).  "A standard or other requirement relating to the

3  control of emissions" dictates such things as a limitation on a vehicle or engine's emissions,

4  equipping of pollution-control devices, or emissions control designs.  See Nat'l Ass'n, 2008 WL

5  4330449, at *13.

6          In National Association, a building trade association comprised of developers and

7  construction firms sought to invalidate and enjoin enforcement of the San Joaquin Valley Unified

8  Air Pollution Control District's Rule 9510, which imposes restrictions on emissions from

9  construction and operation of residential and industrial projects, contending that the rule was

10  preempted by section 7543(e)(1) of the federal Clean Air Act.  Rule 9510 allows project developers

11  to mitigate their emissions in one of three ways: (1) "on-site" by incorporating design features and

12  other pollution mitigation measures into the project; (2) "off-site" by paying a mitigation fee that the

13  District uses to "buy" emission reductions through its emissions reductions incentive project; or (3)

14  by a combination of "on-site" and "off-site" measures.  The court determined that Rule 9510 was not

15  preempted by section 7543(e)(1), because "the options to satisfy Rule 9510 with cleaner engines or

16  fee payments does not convert Rule 9510 into a standard relating to the control of emissions."  The

17  court specifically noted that "Rule 9510 specifies no emissions limits that new nonroad engines or

18  vehicles must satisfy" and thus, the court found that Rule 9510 is not a standard or other requirement

19  relating to control of emissions.

20          Here, similar to National Association, Rules 220 and 310 do not relate to the control of

21  emissions, as they neither limit an engine's omission, require equipping of pollution-control devices,

22  nor require emissions control designs.  See Nat'l Ass'n, 2008 WL 4330449, at *13.  Instead, the

23  Rules merely require registration and payment of fees for certain diesel CI engines in order for the

24  District to provide funding for the issuance and enforcement of registrations for agricultural diesel

25  engines.  (See Hale Affidavit, Ex. 5 at 32.)

26

27

28                                                                    9

1      Accordingly, the Court finds that Rules 220 and 310 are not preempted by section

2  7543(e)(1), because the Rules are not a standard or other requirement relating to the control of

3  emissions.

4                              **b.      State Preemption**

5      Plaintiff moves for summary judgment on the grounds that District Rules 220 and 310 are

6  preempted by 17 C.C.R. § 93116.1(a)(6) and the Portable Equipment Registration Program ("the

7  Program"), 13 C.C.R. § 2450.  (Motion at 1-2.)

8                              **i.      17 C.C.R. § 93116**

9      Plaintiff contends that "insofar as the Rules were issued pursuant to § 93116's authority"

10 they are preempted, because section 93116 "excludes less-than-175-bhp 'portable' . . . engines from

11 its requirements."  (Id.)  In response, the District contends that it "does not purport to regulate

12 emissions from portable sources, only stationary ones," which means that section 93116 is

13 inapplicable.  (District's Opposition at 10.)

14     17 C.C.R. § 93116 provides: "[t]he purpose of this airborne toxic control measure (ATCM) is

15 to reduce diesel particulate matter (PM) emissions from portable diesel-fueled engines having a

16 rated brake horsepower of 50 or greater."  Under section 93116.1, "all portable engines having a

17 maximum rated horsepower of 50 bhp and greater and fueled with diesel are subject to this

18 regulation [except] . . . (6) Engines preempted from State regulation under 42 U.S.C. § 7543(e)(1)."

19      Plaintiff's contention appears to be that, *if* the District relied on section 93116 as authority

20 for enacting Rules 220 and 310, the District relied on an improper source of authority.[8]  However,

21

22          [8]  The Court understands Plaintiff's argument to be that, because section 93116 expressly
   does not cover engines that are preempted from state regulation by the Clean Air Act, the District
23 cannot regulate such engines under the authority of section 93116.  This argument assumes,
   however, that Rules 220 and 310 are emission regulations.  That is, the Clean Air Act, 42 U.S.C. §
24 7543(e)(1), prevents states from enacting certain emissions regulations.  Section 93116, which is
   itself an emissions regulation, expressly states that it does not purport to make emissions
25 requirements for the types of engines already subject to Clean Air Act preemption.  The thrust of
   this argument is that, if Rules 220 and 310 are emissions requirements, then they cannot have been
26 issued pursuant to section 93116, which does not permit regulation of engines preempted from state
   regulation by the Clean Air Act.  This contention essentially recasts Plaintiff's argument with
27 respect to federal preemption under 42 U.S.C. § 7543, since Plaintiff's argument relies on the

28                                             10

**United States District Court**

For the Northern District of California

United States District Court
For the Northern District of California

1  Plaintiff offers no authority or evidence that Rules 220 and 310 were issued pursuant to 17 C.C.R. §

2  93116.  Indeed, Rules 220 and 310 themselves expressly state that they were enacted pursuant to

3  California Health & Safety Code §§ 39656, 39659 and 39666.  As such, there is no basis upon which

4  section 93116 can be said to preempt the District's issuance of Rules 220 or 310.

5      Accordingly, the Court finds that District Rules 220 and 310 are not preempted by 17 C.C.R.

6  § 93116.

7                                      **ii.       The Program**

8      Plaintiff contends that Rules 220 and 310 are preempted by the Program.  (Motion at 11.)

9  Defendant District contends that the Program does not preempt Rules 220 and 310 because it only

10  applies to portable engines, whereas Rules 220 and 310 only apply to stationary engines.  (District's

11  Opposition at 10.)

12      The Program provides:

13      These regulations establish a statewide program for the registration and regulation of
        portable engines and engine-associated equipment (portable engines and equipment
14      units). . . . These regulations preempt districts from permitting, registering, or
        regulating portable engines and equipment units . . . except in the circumstances
15      specified in the regulations. . . . Registration under this regulation is voluntary for
        owners of portable engines or equipment units.

16
17  13 C.C.R. § 2450-51.  To the extent an owner of an engine does not voluntarily register with the

18  state pursuant to the Program, the District is specifically permitted to adopt its own registration

19  requirements.  See 13 C.C.R. § 2451(d).  The Program provides that "in the event that the owner of

20  an engine or equipment unit elects not to register under this program, the engine or equipment unit

21  shall be subject to district permitting requirements pursuant to district regulations."  Id.

22      Therefore, regardless of whether the engines regulated by Rules 220 and 310 are the same as

23  those regulated by the Program, the District has the power to issue its own permitting requirements.

24  13 C.C.R. § 2451(d); see Cal. Health & Safety Code § 39659(a).  Furthermore, there is no evidence

25

26  ──────────────

27  premise that 42 U.S.C. § 7543 preempts Rules 220 and 310.  Having found that Rules 220 and 310
    are not emissions regulations, the Court declines to adopt Plaintiff's reasoning.

28                                      11

United States District Court

For the Northern District of California

1  that the Program operates to preempt Rules 220 and 310, as applied to Plaintiff, because there is no

2  evidence that Plaintiff voluntarily registered with the Program.

3          Accordingly, the Court finds that District Rules 220 and 310 are not preempted by the

4  Program.

5          **2.      District Rule 1010**

6          Plaintiff moves for summary judgment on the ground that District Rule 1010 is preempted by

7  the Clean Air Act, 42 U.S.C. § 7543(e)(2).  (Plaintiff's Motion at 1, 3.)  The District and CARB

8  contend that there can be no preemption, because Rule 1010 only applies to stationary sources.

9  (Defendant's Motion at 8.)

10         The Clean Air Act, 42 U.S.C. § 7543(e)(2), provides:

11         In the case of any nonroad vehicles or [engines used in construction equipment or
           vehicles or used in farm equipment or vehicles which are smaller than 175
12         horsepower], the Administrator shall, after notice and opportunity for public hearing,
           authorize California to adopt and enforce standards and other requirements relating to
13         the control of emissions from such vehicles or engines if California determines that
           California standards will be, in the aggregate, at least as protective of public health
14         and welfare as applicable Federal standards. . . .

15  District Rule 1010 provides in relevant part:

16         This Rule applies to any person who sells a stationary CI engine, offers a stationary
           CI engine for sale, leases a stationary CI engine, or purchases a stationary CI engine
17         for use in the District, unless such engine is:
           1.2.1.1  a portable CI engine,
18         1.2.1.2  a CI engine used to provide motive power
           1.2.1.3  an auxiliary CI engine used on a marine vessel, or
19         1.2.1.4  an agricultural wind machine

20  (Hale Affidavit, Ex. 6 at 40.)

21         Rule 1010 only regulates the use of certain stationary diesel engines.  (See Hale Affidavit,

22  Ex. 6 at 40.)  Rule 1010 § 2.67 defines a stationary CI engine as either one that: (1) is attached to a

23  foundation or stays at a location for more than 12 consecutive months; (2) stays at a location for less

24  than 12 consecutive months but is located at a seasonal source;[9] or (3) is moved from place to place

25  for the purpose of evading the application of the rule.  (Id. at 61-62.)

26
           [9] A seasonal source is a stationary source that remains in a single location on a permanent
27  basis (at least two years).  (See Hale Affidavit, Ex. 6 at 40.)

28                                                  12

1    Plaintiff contends that the State of California and CARB failed to obtain the authorization

2  required by 42 U.S.C. § 7543(e)(2) for the issuance and enforcement of Rule 1010.  (Plaintiff's

3  Motion at 14.)  However, 42 U.S.C. § 7543(e)(2) pertains to emission standards for motor vehicles

4  and moving sources, not stationary engines.  See 42 U.S.C. § 7543.  Indeed, "[n]othing in subchapter

5  II of [§ 7543] relating to nonroad engines shall be construed to apply to stationary internal

6  combustion engines."  42 U.S.C. § 7411.  Therefore, the Court finds that District Rule 1010 is not

7  preempted by 42 U.S.C. § 7543(e)(2), as it does not apply to stationary engines.[10]

8    In sum, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS

9  Defendant and Defendant-Intervenor's Motion for Judgment on the Pleadings with respect to the

10  issue of federal and state preemption of District Rules 220, 310 and 1010.

11  **C.    Due Process**

12    Plaintiff contends that District Rules 220, 310 and 1010 violate Plaintiff's rights to due

13  process because they require registration and payment of fees on engines that the District is without

14  the authority to regulate or register.  (Plaintiff's Motion at 12.)

15    "Substantive due process protection is usually reserved for the vindication of fundamental

16  rights, such as matters relating to marriage, family, procreation, and bodily integrity."  North

17  Pacifica, LLC v. City of Pacifica, 234 F. Supp. 2d 1053, 1060 (N.D. Cal. 2002) (citing Albright v.

18  Oliver, 510 U.S. 266, 271-72 (1994)).  Where a fundamental right is not implicated, governmental

19  action need only have a rational basis to be upheld against a substantive due process attack.  United

20  States v. Alexander, 48 F.3d 1477, 1491 (9th Cir. 1995).  If a statute is not arbitrary, but implements

21  a rational means of achieving a legitimate governmental end, it satisfies due process.  United States

22  v. Klein, 860 F.2d 1489, 1500-01 (9th Cir. 1988).

23

24

25    [10]  Plaintiff also contends that the decision in Pac. Merchant preempts the District from
issuing or enforcing Rule 1010.  (Plaintiff's Motion at 1.)  In Pac. Merchant, the court found that 13
C.C.R. § 2299 was preempted by 42 U.S.C. § 7543.  517 F.3d at 1115.  However, Pac. Merchant did

26  not hold that 42 U.S.C. § 7543 was applicable to stationary engines like those involved in this case.
Instead, Pac. Merchant involved the regulation of engines aboard a moving vessel.  Therefore,

27  District Rule 1010 is not preempted based on the decision Pac. Merchant.

28                                          13

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   Plaintiff contends that the District violated its rights to due process, as there is no "rational

2   basis" for the District rules at issue. (Plaintiff's Motion at 12.) However, Plaintiff admits that

3   District Rules 220, 310 and 1010 serve a legitimate governmental purpose. (Id. at 13.) In its

4   Motion, Plaintiff unequivocally states that "Rules 220, 310 and, obviously 1010, serve a legitimate

5   governmental interest: the minimization of air pollution from diesel engines." (Id.) Plaintiff

6   contends that the implementation of this purpose violates due process, however, because Defendant

7   "acted beyond the authority conferred upon it by both State regulation and in derogation of the

8   preemption that is the keystone of the CAA." (Id.) With respect to Rule 1010, the District was

9   permitted to adopt a regulatory scheme for stationary sources. See Cal. Health & Safety Code §§

10  39659, 39666; 42 U.S.C. §§ 7411, 7416. Further, the Court has found that Rules 220, 310 and 1010

11  are not pre-empted by either state or federal regulations that would prohibit the District from

12  adopting a registration and fee program for diesel engines or setting emission standards for

13  stationary sources. Thus, the Court finds that Plaintiff does not have a valid due process claim.

14  Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS

15  Defendant and Defendant-Intervenor's Motion for Judgment on the Pleadings with respect to the

16  issue of due process.

17  **V. CONCLUSION**

18  The Court DENIES Plaintiff's Motion for Summary Judgment, DENIES Plaintiff's Motion

19  for a Permanent Injunction, and GRANTS Defendant and Defendant-Intervenor's Motion for

20  Judgment on the Pleadings. Judgment shall be entered accordingly.

21

22

23  Dated: July 14, 2009

24  JAMES WARE
    United States District Judge

25

26

27

28                                  14

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Gavin Geraghty McCabe gavin.mccabe@doj.ca.gov
Leslie John Girard girardlj@co.monterey.ca.us
Matthew Scott Hale Matt@HaleEsq.com


**Dated:  July 14, 2009**                                    **Richard W. Wieking, Clerk**


                                                     **By:   /s/ JW Chambers**
                                                           **Elizabeth Garcia**
                                                           **Courtroom Deputy**

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28